UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
Clerk's Office
USDC, Mass.
Date ~~3-00~~
~~En tales~~
Deputy Clerk

## 04 10877 RCL

KOUROSH ALIPOR, Individually and
On Behalf of
All Others Similarly Situated

MAGISTRATE JUDGE ~~Collins~~

CIVIL ACTION NO. _____

                        Plaintiff,

v.

VASO ACTIVE PHARMACEUTICALS,
INC., JOHN J. MASIZ AND JOSEPH
FRATTAROLI,
                        Defendants.

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

RECEIPT # 55643
AMOUNT $ 150
SUMMONS ISSUED ye
LOCAL RULE 4.1 ____
WAIVER FORM ____
MCF ISSUED ____
BY DPTY. CLK ____
DATE 5/4/04

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Vaso Active Pharmaceuticals Inc. ("Vaso Active" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of purchasers of the securities of Vaso Active between December 11, 2003 and March 31, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule IOb-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein occurred in substantial part in this Judicial District. The Company maintains it headquarters within this Judicial District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Kourosh Alipour, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Vaso Active at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Vaso Active is a Delaware corporation and maintains its principal executive offices at 99 Rosewood Drive, Suite 260, Danvers, MA 01923. Vaso Active is an early stage company focused on commercializing, marketing and selling over-the-counter ("OTC") pharmaceutical products, with a particular focus on drugs that

incorporate the vaso active lipid encapsulated ("VALE") transdermal delivery technology.

8.    (a)    Defendant John J. Masiz ("Masiz") was, at all relevant times, Chairman, President and Chief Executive Officer of Vaso Active.

(b)    Defendant Joseph Frattaroli ("Frattaroli") was, at all relevant times, Chief Financial Officer of Vaso Active.

(c)    Defendants Masiz and Frattaroli are collectively referred to herein as the "Individual Defendants."

9.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Vaso Active, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business,

operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Vaso Active, each of the Individual Defendants

4

had access to the adverse undisclosed information about Vaso Active's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Vaso Active and its business issued or adopted by the Company materially false and misleading.

13.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso Active securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Vaso Active' business, operations, management and the intrinsic value of Vaso Active common stock; (ii) allowed the Company to complete a stock offering thereby reaping over $8 million in proceeds; (iii) allowed the Company to complete a private placement with an institutional investor for $7.5 million; and (iv) caused Plaintiff and other members of the Class to purchase Vaso Active common stock at artificially inflated prices.

5

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Vaso Active between December 11, 2003 and March 31, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a control-ling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vaso Active common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Vaso Active or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

     (a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

     (b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Vaso Active; and

     (c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

21.    Vaso Active manufactures, markets and sells over-the-counter pharmaceutical products. According to the Company, the effectiveness of its products have been significantly enhanced through the incorporation of the Company's proprietary "VALE transdermal" delivery technology.

22.    During the Class Period, defendants materially misrepresented that

"independent" clinical trials confirmed that its foot cream product Termin8 - was a "remarkably effective cure" for athlete's foot. Specifically, the Company represented that the clinical trials were conducted by "independent physicians" and reviewed by the New England Medical Center, in Boston, MA. In fact, however, the person who supervised the study was a lone podiatrist hand-picked by Vaso Active's parent company, BioChemics Inc. Furthermore, the New England Medical Center did nothing more than analyze the statistical information gathered by BioChemics Inc. -- something the center does all the time for paying customers. In news articles, the medical center confirmed that it was unable to draw any conclusions about the effectiveness of the product, since it had no hand in selecting the patients and gathering the evidence.

23.    On March 31, 2004, financial markets were stunned when the SEC halted the trading of the Company's stock. The SEC release questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

### Materially False And Misleading
### Statements Issued During The Class Period

24.    The Class Period begins on December 11, 2003. On that date, the Company issued a press release announcing the completion of its IPO thereby raising approximately $7.25 million. The registration statement (the "Registration Statement") filed with the SEC in connection with the IPO was signed by Defendants Masiz and Frattaroli, among others. With regards to the Company's products, the Registration Statement, stated, in pertinent part, as follows:

Although all of our product candidates will be entering established markets, they

8

will be distinct and unique among existing products in those markets in that they will all incorporate the VALE technology. We intend to market these product candidates using this distinction in much the same way as our current products have been marketed. Since these product candidates are in the early development stage, we are not able to predict when these product candidates will be ready for distribution and sale, if ever.

Our current product candidates include:

| Product Classification | Product Description | Total Annual Market Size | Development Stage |
|---|---|---|---|
| Analgesic | Topically applied analgesic | $3.1 billion | Formulation being finalized |
| Toenail fungus treatment | Termin8lXtinguish derivative topically applied to treat toenail fungus | $800 million | Formula finalized |
| Acne treatment | Topically applied, anti-bacterial, anti-inflammatory Transdermally delivered Hydrocortisone | $325 million | In development |
| First aid treatment | Transdermally delivered anti-bacterial and Hydrocortisone | $395 million | Formula finalized |
| Hand and body lotion | OTC skin hydration | $1.06 billion | Formula finalized |
| Psoriasis | Transdermal anti-inflammatory, anti-itch and skin hydration | -- | Formula in development |

25.     With regards to certain products and the clinical studies conducted by the

Company, the Registration Statement stated, in pertinent part, as follows:

> ... During the course of the 12 month period immediately following this offering,
> all deFEET branded product currently in circulation will either be sold or removed
> from circulation and replaced with an identical product which will be
> commercialized, marketed and sold by us under the name Termin8 and/or
> Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be
> identical to that of deFEET.
>
> All three of these products have been through the research and development, pre-
> clinical study and clinical trial stages and have received FDA approval. They are
> either currently being marketed and commercialized or will enter the marketing
> and commercialization phase upon the consummation of this offering. [Emphasis
> added.]

26.     With regards to the clinical studies completed specifically on

Termin8, formerly known as deFEET, the Registration Statement stated, in pertinent part,

as follows:

> deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication
> designed to eliminate athlete's foot infection in less than 10 days. It employs the
> VALE drug delivery system to effectively and efficiently deliver a mild antifungal
> agent called Tolnaftate into the skin surrounding the affected area. In a pilot clinical
> trial, supervised by independent physicians and analyzed by the New England
> Medical Center in Boston, MA, 20 severely infected athlete's foot patients were
> treated and studied over a 42-day period. There were two groups in the study, one
> treated with deFEET and the other with Schering-Plough's Tinactin®. In this
> study, deFEET eliminated the infection in 90% of the test group in 7 days and
> 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate
> in the same concentration as deFEET, required 42 days to cure its first patient.
> These results demonstrate the ability of the VALE technology to deliver
> Tolnaftate much more effectively than a product not utilizing VALE technology.
> [Emphasis added.]

27.     On December 16, 2003, the Company announced that it had successfully

closed on the placement of all of its over-allotment shares. The total over-allotment shares

were 217,500 shares of Class A common stock, placed at $5.00 per share. Combined with

the 1,450,000 Class A common shares placed during the Company's IPO, Vaso Active

raised over $8 in gross proceeds.


28.      On February 19, 2004, the Company announced a 3 for 1 stock split of

its common stock. Defendant Masiz stated that the stock split was a reaction to strong

institutional demand for Vaso Active shares, commenting in pertinent part as follows:

> One of the ways many institutions measure investment appeal is through the
> liquidity of a security. Recently, there has been significant demand for our
> common stock at the institutional level. However liquidity has proved to be an
> obstacle. To help resolve this, the Board of Directors has declared this 3-for-1
> stock split to increase our liquidity to the public market place, thus enhancing our
> securities' appeal to both retail and institutional investors.

29.      On March 17, 2004, the Company announced that it had completed a

private placement transaction in the amount of $7,500,000 with an institutional investor.

The investment which is in the form of an 18 month 2% Convertible Note, is convertible

into shares of Class A common stock at a conversion rate of $9 per share, at the option of

the investor. In addition, Vaso Active issued to the investor warrants to purchase 166,667

shares of Class A common stock at an exercise price of $8.75 per share. Defendant

Masiz, commenting positively on this transaction, stated, in pertinent part, as follows:

> The ability to secure additional funds through the completion of this private
> placement gives Vaso Active significant new working capital to augment the
> working capital derived from its TO. This will enhance Vaso Active's capital base
> with which to operate and will permit the Company to take advantage of strategic
> opportunities that arise in the course of growing our business. In addition, the
> execution of this agreement at a premium to the current market price of our
> common stock underscores the value of our technology to a material investor.
> [Emphasis added.]

30.      On March 26, 2004, Vaso Active filed its annual report with the SEC on

Form 10-KSB for the period ending December 31, 2003. The annual report was signed by

11

defendants Masiz and Frattaroli. Regarding its Termin8 product, defendants represented that:

> Termin8 is a topically -applied, transdermal anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. Termin8 employs the VALE transdermal drug delivery system to effectively and efficiently deliver a mild anti-fungal agent called Tolnaftate into the skin surrounding the affected area. [Emphasis added.]

31.    On that same day, in an article published by TheStreet.com reported that during a conference to discuss the Company's 2003 financial results and 2004 outlook the company said it expects sales to soar next year because of a number of "strategic" deals it has reached to market Termin8 and other lotions that use its "revolutionary" transdermal delivery system.

32.    The statements referenced above in ¶¶ 24-26 and 28-31 were each materially false and misleading when made as they failed to disclose and/or misrepresented the following material adverse facts which were then known to defendants or recklessly disregarded by them:

(a)    that the Company's claims regarding the effectiveness of its Termin8 product were unsubstantiated;

(b)    that the FDA had not fully endorsed certain of its key products; and

(c)    as a result of the foregoing, defendant's statements concerning the efficacy of the Company's products, as well as the Company's current and future financial prospects were lacking a reasonable basis at all relevant times.

33.    Then, on March 31, 2004, the markets were stunned when the SEC halted

the trading of the Company's stock through April 15. The SEC release questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

34.    At the time of the trading halt, Vaso Active common shares were priced at $7.59 per share.

35.    The market for Vaso Active's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Vaso Active's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Vaso Active common stock relying upon the integrity of the market price of Vaso Active's common stock and market information relating to Vaso Active, and have been damaged thereby.

36.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Vaso Active's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

37.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a

13